**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN, P. J., and BROWN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**February 8, 2021**

# In the Court of Appeals of Georgia

A20A1999. RIOS v. THE STATE.

DILLARD, Presiding Judge.

Approximately ten years ago, Hugo Rios[1] entered an *Alford* plea[2] to two counts of violating the Georgia Controlled Substances Act. Following the trial court's grant of his petition for an out-of-time appeal, Rios challenges those convictions, arguing that they should be vacated because the trial court did not resolve the conflict between his claims of innocence and guilty plea and because his plea was not knowing and voluntary. For the reasons set forth *infra*, we affirm.

---

[1] In the record, Rios is also referred to as Fernando Chavez Chavez and Alejandro Lopez-Balocio.

[2] *See North Carolina v. Alford*, 400 U.S. 25, 38 (91 SCt 160, 27 LE2d 162) (1970) (holding that a trial court can accept a guilty plea when there is a strong factual basis for the plea and the defendant clearly expresses a desire to enter it despite the defendant's claims of innocence).

The record reflects that in 2010, Rios entered an *Alford* plea to two drug offenses. Years later, in 2019, the trial court granted Rios's motion for an out-of-time appeal. This appeal follows.

When a defendant challenges the validity of a guilty plea, the State has "the burden of showing that the plea was made intelligently and voluntarily."[3] And the State may satisfy its burden to show that a plea was knowingly and voluntarily made by demonstrating "on the record of the guilty plea hearing that the defendant understood the rights being waived and possible consequences of the plea or by pointing to extrinsic evidence affirmatively showing that the plea was voluntary and knowing."[4] More specifically, to establish that Rios's guilty plea was voluntarily, knowingly, and intelligently made, under *Boykin v. Alabama*[5], it must be shown that

---

[3] *Bell v. State*, 294 Ga. 5, 6 (1) (749 SE2d 672) (2013); *see Lejeune v. McLaughlin*, 296 Ga. 291, 291 (1) (766 SE2d 803) (2014) ("To properly form the basis for a judgment of conviction, a guilty plea must be voluntary, knowing, and intelligent.").

[4] *Bell*, 294 Ga. at 6 (1); *accord Bradley v. State*, 305 Ga. 857, 859 (2) (828 SE2d 322) (2019).

[5] 395 U.S. 238 (89 SCt 1709, 23 LE2d 274) (1969).

he was "informed of the privilege against compulsory self-incrimination, the right to a trial by jury, and the right to confront one's accusers."[6]

So, when it comes to an *Alford* plea, the trial court "may accept a guilty plea from a defendant who claims innocence if the defendant has intelligently concluded that it is in his best interest to plead guilty and the court has inquired into the factual basis for the plea and sought to resolve the conflict between the plea and the claim of innocence."[7] Furthermore, the voluntariness and intelligence of an *Alford* plea is judged "by the same standard as a routine guilty plea: whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."[8]

Here, at the outset of the plea hearing, Rios's counsel informed the trial court that she explained to her client that he had two options for resolving his drug charges—either enter a guilty plea or go to trial. At the time of the hearing, there was

---

[6] *Campos v. State*, 292 Ga. 83, 85 (734 SE2d 359) (2012).

[7] *McKiernan v. State*, 288 Ga. 140, 142 (2) (702 SE2d 170) (2010) (punctuation omitted); *accord Duque v. State*, 271 Ga. App. 154, 154 (1) (608 SE2d 738) (2004).

[8] *Skinner v. State*, 297 Ga. App. 828, 831 (2) (678 SE2d 526) (2009) (punctuation omitted); *accord Ellis v. State*, 243 Ga. App. 431, 432 (533 SE2d 451) (2000).

3

no plea offer still "on the table."[9] Rios's counsel also noted that the mandatory minimum for his offenses was 30 years to serve 25, which was the sentence Rios's co-defendants received when they pleaded guilty. The court then addressed Rios, asking if he was satisfied with his attorney, and he responded by claiming that he was innocent of the charged offenses. Rios said he could not afford another attorney, and the court informed Rios that his current attorney would remain his attorney in the event he proceeded to a jury trial. Rios responded that he did not want to go to trial.

At this point, Rios's attorney asked for a few minutes to speak with her client about the case, and the court addressed Rios, stating: "Sir, [your] attorney wants to make sure you're aware of your options before you go to trial. That's why she had you brought in here, sir. But it's your decision whether to plead guilty or not. If you stand mute or you don't know what to do, the Court will order a trial to be conducted." Then Rios asked, "But I'm not going to trial, am I?" The court did not respond to this question.

---

[9] According to Rios's counsel, the State initially offered him a negotiated plea agreement, which he rejected.

4

After Rios had an opportunity to consult with his counsel, she informed the court that he wished to enter a non-negotiated *Alford* plea to the charged offenses. And defense counsel then summarized her conversation with Rios:

> Judge, just so there's no confusion with regard to the plea colloquy, we are seeking to enter this plea under *Alford vs. North Carolina*. I know that's in the Court's discretion. Based on my conversations with Mr. Rios, he does tell me that essentially he was present at the scene but was not engaged in or aware of or actively participating in the trafficking of the drugs that were in the household. But he does understand and we've discussed the evidence in the case. After many consultations with myself and reviewing the evidence in the case, he's made the decision that it's in his best interest to resolve this case with a plea as opposed to taking his chances with a jury.

The trial court confirmed with Rios that he wanted to plead guilty. Then, after the State claimed it could rebut the "mere presence defense," it provided the court with a factual basis for Rios's plea.

According to the State, the evidence would show that on May 10, 2009, members of the local Drug Enforcement Administration went to an address in Duluth, Georgia. Rios answered the door, and when he saw police officers, he slammed the door and fled to a bathroom. The officers kicked down the door, and when they entered the bathroom, they found bags containing methamphetamine stuffed into a

hole in the wall. Ultimately, the officers found 200 pounds of methamphetamine in the house and another "large quantity" of the drug in a truck owned and operated by Rios. Additionally, approximately 2.2 pounds of cocaine was "[m]ixed in" with the methamphetamine.

Rios then testified regarding his decision to enter an *Alford* plea.[10] Specifically, he indicated that he fully understood the charges against him. He further noted his understanding that, by pleading guilty, he was giving up his right to (1) a trial by jury; (2) the presumption of innocence; (3) confront the witnesses against him; (4) subpoena witnesses for his defense; (5) testify himself or present other evidence; (6) have an attorney represent him throughout the trial; and (7) not incriminate himself. When the trial court asked Rios whether he still wanted to plead guilty knowing that he was giving up these rights, he responded "Yes, because I don't want to go to trial. I'm afraid to lose at trial." The court then confirmed *again* with Rios that he understood he was giving up the rights listed above.

Rios also testified that he was aware he could be sentenced to as many as 30 years for each of his charges and be required to pay a mandatory minimum fine of two

___

[10] English is not Rios's first language, but the court provided a translator for him during the hearing.

million dollars combined for those charges. He further testified that he understood he was entering a non-negotiated plea and that the court could sentence him to up to 60 years in prison. According to Rios, no one used force, threats, or promises to cause him to plead guilty against his will. Rios testified that his lawyer had provided "excellent" assistance and that, through the interpreter, he understood all of the questions he had been asked during the hearing. Thereafter, the following exchange occurred:

> The court: Your attorney previously represented that you're wishing to enter a guilty plea under *Alford vs. North Carolina*. Are you doing so as a tactical decision, recognizing based on the strength of the State's case that if your case was to proceed to trial and you were convicted that you could face a lengthier sentence than you might get here today by pleading guilty?

> Rios: Yes, yes.

Nevertheless, when questioned by the State, Rios continued to maintain his innocence, claiming that he was only at the crime scene to paint the house and was unaware of the drugs. The court then asked Rios if he had anything else he wanted to say before it imposed his sentence, and he responded by asking the court to help him because he was innocent. Ultimately, the court was satisfied that the State

provided a factual basis to support Rios's guilty plea and sentenced him to serve 30 years for each of his charges to run concurrently.

On appeal, in two claims of error, Rios contends that his *Alford* plea should be vacated because the trial court did not resolve the conflict between his claims of innocence and his decision to plead guilty and because his plea was not knowing and voluntary. We disagree.

Under *Boykin*, a plea is considered to be voluntarily, knowingly, and intelligently made so long as the defendant is "informed of the privilege against compulsory self-incrimination, the right to a trial by jury, and the right to confront one's accusers."[11] And here, Rios was informed of these rights—as well as several others—and unequivocally confirmed under oath at least twice that he understood he was forfeiting them by pleading guilty. Rios complains that the trial court made no "formal finding" that his plea was entered voluntarily or that he waived his *Boykin* rights. But it is apparent on the face of the record that Rios understood and waived his *Boykin* rights, and he has not provided any legal authority suggesting that a "formal finding" as to that issue must be made. Furthermore, the Supreme Court of Georgia has held that "in the absence of explicit factual and credibility findings by

[11] *Campos*, 292 Ga. at 85.

8

the trial court, we presume implicit findings were made supporting the trial court's decision."[12] And here, after confirming that Rios understood he was forfeiting his *Boykin* rights, the trial court, by accepting his guilty plea, implicitly found that the plea was knowing and voluntary.

Rios also asserts that the trial court failed to confirm that he was fully informed of the consequences of his plea, including the mandatory minimum sentences for his offenses. But Rios's counsel expressly stated the mandatory minimum sentences for his plea. And regardless, Rios decided to plead guilty knowing that he *could* have received up to 60 years of confinement, which is much higher than the 30-year sentence he actually did receive.

Additionally, Rios contends that he was not informed of the "deportation rules" or of the fact that—because he was entering a non-negotiated guilty plea—the trial court would have complete discretion over imposing his sentence. But those claims

---

[12] *Davis v. State*, 306 Ga. 430, 432-33 (831 SE2d 804) (2019); *see Mahaffey v. State*, 308 Ga. 743, 747 (843 SE2d 571) (2020) (holding that the trial court "implicitly rejected" the defendant's self serving statement that during his plea hearing he was concerned that he would not be able to testify on his own behalf); *Childrey v. State*, 294 Ga. App. 896, 900-01 (670 SE2d 536) (2008) (holding that the record supported the trial court's implicit finding that "there was no reasonable probability that [the defendant] would have pled guilty but for counsel's ineffectiveness" (punctuation omitted)).

are belied by the record. Indeed, Rios pleaded guilty after confirming his understanding that, as a result of his plea, he *would* be deported from the United States at "some time." He also confirmed his understanding that he was entering "a non-negotiated open-ended plea agreement," and the court had discretion to sentence him to as many as 60 years in prison.

Finally, Rios argues that his convictions must be vacated because the record does not show that the trial court resolved the conflict between his claim of innocence and his decision to plead guilty. And Rios is indeed correct that the trial court may accept a guilty plea from a defendant who claims innocence only "if the defendant has intelligently concluded that it is in his best interest to plead guilty and the court has inquired into the factual basis for the plea and sought to resolve the conflict between the plea and the claim of innocence."[13] But that is exactly what happened here. As detailed above, the trial court specifically found that it was satisfied that the State provided a sufficient factual basis for his plea. The court also asked Rios about his reasons for pleading guilty despite his claims of innocence, and Rios confirmed he was making a "tactical decision" to plead guilty after reviewing the evidence because

---

[13] *McKiernan*, 288 Ga. at 142 (2) (punctuation omitted); *accord Duque*, 271 Ga. App. at 154 (1).

he believed he could receive a longer sentence if he proceeded to trial. Indeed, Rios testified that he was afraid to "lose at trial." Under these circumstances, the trial court met its responsibility of ascertaining the factual basis for the plea and resolving any conflict between Rios's claim of innocence and his guilty plea.[14]

For all these reasons, we affirm Rios's convictions.

*Judgment affirmed. Rickman, P. J., and Brown, J., concur.*

---

[14] *See McKiernan*, 288 Ga. at 142 (2) (affirming an *Alford* plea when the record showed that the defendant "intelligently concluded that pleading guilty was in his best interest and that the trial court properly reviewed and considered the basis for his plea"); *Storch v. State*, 276 Ga. App. 789, 791 (1) (a) (625 SE2d 70) (2005) (affirming an *Alford* plea when the court found that the factual basis provided by the State was sufficient to support the plea and in pleading guilty, despite claiming innocence, the defendant chose to avoid trial and a potentially harsher sentence); *Duque*, 271 Ga. App. at 156 (1) (rejecting the defendant's argument that the trial court failed to resolve the conflict between his claims of innocence and decision to plead guilty when he testified that he believed that he thought pleading guilty was in his best interest and that there was a substantial likelihood he would be convicted if he proceeded to trial).